# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**ROXANNE LYNNE ALLEN**                                                                          **PLAINTIFF**

**VERSUS**                                               **CIVIL ACTION NO. 1:16cv206-RHW**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security**                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Through counsel, Plaintiff Roxanne Lynne Allen filed this action June 15, 2016, seeking judicial review under 42 U.S.C. § 405(g) and § 1382c(a)(3) of the denial of Allen's claims for Social Security disability and Supplemental Security Income benefits.[1]  Allen's motion for summary judgment reversing the Commissioner's decision presents for review whether the Commission properly (1) evaluated her ability to meet non-exertional requirements of light unskilled work, (2) credited her treating physicians' findings as to fibromyalgia, (3) analyzed the effects of her obesity on her exertional impairments, and (4) credited treating physicians' findings as to spinal disorders.  [14, p. 1]  The parties consented to exercise of jurisdiction by the United States Magistrate Judge under 28 U.S.C. § 636(c) and FED.R.CIV.P. 73 and the case was reassigned to the undersigned for all further proceedings.  [11], [12]

### Facts and Procedural History

In January 2013 Allen filed applications for Social Security disability benefits and supplemental security income, alleging disability since January 9, 2012 at age 51,[2] due to

---

[1]Allen has been represented by counsel at least since February 4, 2014.  [10, p. 166]

[2]Allen was born in July 1960.  She initially alleged onset of disability on September 10, 2010, but amended the date at the hearing in this case.  [10, pp. 93, 51-52]  Prior unsuccessful applications had claimed disability beginning April 17, 2008, and September 10, 2010.  [10, pp. 76-92, 95, 233, 250]

degenerative disc disease, depression, fibromyalgia, HBP, spinal stenosis and arthritis. [10, pp. 94-99] The Commission denied the applications initially on July 8, 2013 and on reconsideration on September 30, 2013. [10, pp. 89, 96, 107, 118] On December 4, 2014, Administrative Law Judge David Benedict conducted a hearing, at which Allen and Vocational Expert Kelly Hutchins testified. [10, pp. 51-72]

Allen testified she has a GED and two years of college. She has a valid driver's license, and drives once or twice a week. From 1995-2005, she worked at Grand Casino, starting as a pit clerk for about three months, then in revenue audit for a year, as a hotel front desk clerk for three years, and as a dealer for five years. In 2007 she worked at Imperial Palace Casino as a security observer. She has not worked since January 2012. [10, pp. 55-56, 205, 225]

Allen testified her primary care provider Dr. Barnes thought she might be having seizures, but neurologist Dr. Lennon Bowen disagreed. She stated she loses time, things occur that she does not remember. Her forgetfulness has gotten worse since January 2012, as have her breathing problems. She testified she stopped smoking a week or two before the hearing, that she has a puff but cannot really smoke anymore. Her breathing is not as bad since she stopped. She stated she was just in the hospital with flu and pneumonia, and is still sick.[3] Harsh smells trigger breathing problems, and she thinks her weight affects her breathing as well–she is 5'6" and weighs 274 pounds. [10, p. 63] Allen takes Zoloft for stress and anxiety. She testified she

---

[3]Singing River Hospital records dated November 29-10, 2014 mention influenza, pneumonia and exacerbation of COPD. [10, pp. 525, 552] Allen's records show she had been a 1.5 pack per day smoker for some 35 years, and she continued smoking until shortly before the December 2014 hearing. [10, pp. 311, 389, 402, 411, 423, 427, 436] Even after a pulmonary function test showed "moderate obstruction which was reversible," Allen stated at an October 16, 2013 visit with Dr. Babar that she was "not ready to quit [smoking] due to stressors in her family." [10, p. 426] In late March 2013, Allen told Dr. Stephens that her daughter was on house arrest and Allen had custody of her young grandchildren; the next month she told Dr. Stephens stress at home had increased because her daughter had been taken to prison the night before for mailing Fentanyl patches to her boyfriend in prison; and she told Dr. Jackson in July that she was the guardian of her three pre-teen grandchildren. [10, pp. 337, 389]

can carry a gallon of milk a short distance.  She drops things a lot and does not carry anything while using her cane, which she stated she uses all the time for balance.  She testified she can stand for only a few minutes before she has to lean on something or sit down, if she stands too long she has back pain which feels like her back is being "cut into."  If she does not sit down and rest, she feels like her body is twisting while she walks.  She can sit for thirty minutes before having to move her feet or shift her body; when she sits the pain "rolls up and down" her back in waves.  She testified she has mild neuropathy, numbness and tingling in her feet and hands.

Allen described her daily activities as reading,[4] and using the computer a little.  She does not watch much television,[5] but tries to catch up on sleep due to her irregular sleeping habits – she sleeps two or three hours at a time, wakes, then sleeps again.  She uses oxygen at night for COPD.  She testified she cannot, or does not, make beds, and cannot sweep or mop even with frequent rest; she can fold clothes but cannot put them away.  [10, pp. 58-65]

Vocational Expert (VE) Hutchins reviewed Allen's work history and testified Allen's most recent work as a security observer and dispatcher is sedentary work with a skill level of 4; her work as a casino dealer is light work with a skill level of 5; the front desk clerk job is light work with a skill level of 4; and the audit clerk is sedentary with a skill level of 7.  [10, p. 67]  Considering Allen's age, education and work experience; her ability to lift 20 pounds occasionally and 10 pounds frequently; to sit, stand, and walk six hours in an eight-hour day; to occasionally balance, stoop, kneel, crouch, crawl, climb ramps/stairs, but never climb ladders, ropes or scaffolds; her need to avoid concentrated exposure to pulmonary irritants and to have no no exposure to hazards, *e.g.*, moving machinery or unprotected heights; her ability to maintain

---

[4]She testified loves to read but can maintain attention for only thirty minutes or so, it takes her a week to read a paperback.  [10, pp. 62-3]

[5]She once liked to play video games, but does not do that any more due to stress.  [10, pp. 62-3]

attention/concentration for two-hour blocks of time; and a limitation to unskilled, low-stress work involving simple, routine, repetitive tasks with no fast-paced production requirements and only simple work related decisions and few or no changes in the work setting, Hutchins opined that Allen remained capable of work as a mail sorter, bench assembler, or linen folder -- all of which are light work with a skill level of 2, and such jobs are available in significant numbers. [10, pp. 68-9]  No jobs would be available for one capable of reasoning at only level 1, or maintaining attention or concentration for only one-hour blocks of time and would be off task more than 25 percent of the day.  [10, p. 70]

On January 28, 2015, ALJ Benedict issued an eleven-page decision finding Allen not disabled under the Social Security Act.  [10, pp. 13-22]  The Appeals Council denied review of that decision on April 11, 2016 [10, pp. 5-7], and Allen filed the present action in this Court.

## Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision.  *Villa*, 895 F.2d at 1022.  Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court.  It is not the Court's prerogative to substitute its judgment

for that of the Commissioner or to re-weigh the evidence. *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Harris*, 209 F.3d at 417 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (a finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision). Factual findings supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984). Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the administrative decision [*Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)]; the decision of the Commissioner is accorded great deference and "will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the ... decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

<u>Analysis</u>

The Social Security Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C.A. § 423(d)(1)(A). As the one claiming disability, Allen had the burden to prove a disability which precluded her from engaging in substantial gainful work prior to December 31, 2013, her date last insured. *Masterson v.*

*Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) ("suffering of some impairment does not establish disability; a claimant is disabled only if [she] is 'incapable of engaging in *any* substantial gainful activity'").

ALJ Benedict applied the correct law for determining disability – following the five-step sequential evaluation process set out at 20 C.F.R. § 404.1520(a)(4), § 416.920(a)(4)(i-v). Through the first four steps of the evaluation process, the burden of proof rests on the party claiming disability. *Leggett*, 67 F.3d at 564; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Step one requires determination of whether the claimant is engaging in substantial gainful activity, *i.e.*, work that involves significant physical or mental activities and is usually done for pay or profit. Judge Benedict found that Allen had not engaged in substantial gainful activity since January 9, 2012.

At step two the ALJ determines whether the claimant has a medically determinable impairment or combination of impairments which meets the duration requirement and is severe, *i.e.*, which significantly limits ability to perform basic work activities. ALJ Benedict found Allen has severe impairments of mild neurocognitive disorder, obstructive pulmonary disease (COPD), seizure disorder and obesity which impose more than minimal work-related limitations.

Step three requires determination of whether the claimant's impairment or combination of impairments is of such severity that it meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Unless the impairment or combination of impairments is of such severity and meets the duration requirement, the analysis continues to step four. Judge Benedict considered Allen's obesity in determining whether her medically determinable impairments meet/equal a listing, but lack of medical evidence and the fact that "no

treating or examining physician has recorded findings equivalent in severity to the criteria of 3.02, 11.02, 11.06,[6] or any listed impairment...," led him to find Allen had no impairment or combination of impairments which meets/equals the severity of a listed impairment. [10, p. 4] The ALJ further found Allen's claimed mental impairment does not meet or medically equal the criteria of listing 12.02 (organic mental disorders), due to lack of evidence of any marked limitations or restrictions – Allen was found to have only mild restriction in daily living activities, mild difficulties in social functioning, moderate difficulties with respect to concentration, persistence or pace, and no episodes of decompensation of extended duration. [10, pp. 215, 217, 218] Furthermore, Allen's January 2014 psychological evaluation showed only "mild neurocognitive disorder." [10, p. 417] The listing requires some marked restriction, *i.e.*, more than moderate but less than extreme, and repeated episodes of decompensation of extended duration. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04; *Heck v. Colvin*, 2017 WL 83387, at *2 (5th Cir. Jan. 9, 2017).

At the fourth step of the evaluation, the ALJ must determine (1) the claimant's residual functional capacity (RFC), *i.e.*, her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments, and (2) whether she has the residual functional capacity to perform the requirements of her past relevant work. Based on all the record evidence, including the testimony of the VE, Judge Benedict found Allen retained the residual functional capacity (RFC) to perform light work,[7] except that she could lift/carry 20 pounds occasionally and 10 pounds frequently, and additional limitations to sit/stand/walk six

---

[6]Listing 3.00 deals with respiratory disorders including COPD (3.02); Listing 11.00 with neurological disorders such as epilepsy (11.02) and Parkinson syndrome (11.06). 20 C.F.R. Part 404, Subpart P, Appendix 1.

[7]Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. 404.1567(b), 20 C.F.R. 416.967(b).

hours in an eight-hour day; occasionally balance, stoop, kneel, crouch, crawl, climb ramps/stairs; never climb ladders, ropes or scaffolds; avoid concentrated exposure to pulmonary irritants; avoid exposure to hazards, *e.g.*, dangerous moving machinery or unprotected heights; maintaining attention/concentration for two-hour blocks of time; be limited to simple, routine, repetitive tasks of unskilled low-stress work with no fast-paced production requirements, only simple work related decisions and few or no changes in the work setting. Judge Benedict found, however, that Allen was unable to perform her past relevant work as a dispatcher, casino dealer, front desk clerk or audit clerk [10, p. 20]

Allen contends the ALJ did not properly evaluate her non-exertional (mental) limitations. Having reviewed the record in its entirety, the Court finds the ALJ's decision on this issue is supported by substantial record, including but not limited to the findings of Lennon Bowen, M.D., who conducted a neurological examination of Allen in October 2012[8] [10, pp. 310-314], the results of Allen's November 2013 mini mental status examination [10, p. 504], and the findings of John Stoudenmire, Ph.D., whose January 2014 psychological evaluation concluded that Allen had a mild neurocognitive disorder and, by history, a mild depression disorder; that she remained "quite capable of managing her own affairs, looking after her finances, making her own health decisions, driving, etc.," all of which Dr. Stoudenmire encouraged her to continue doing. [10, p. 417] The Court finds the ALJ properly evaluated Allen's claimed mental impairments in accordance with the regulations, and that the ALJ's decision with respect to said

---

[8] Dr. Bowen found cognitive testing was "normal for age," reported that he did not "get a feeling she has a degenerative disease especially given normal cognitive exam and symptoms started 5-6 years ago or more," and he has repeatedly expressed doubt that Allen had seizures, stating, "Essentially, she just forgets things." [10, pp. 312-13, 492, 496, 502] He thinks she has stress and anxiety issues. Dr. Bowen also found Allen to have a normal EEG on November 12, 2012, with no "focal, diffuse or generalized abnormalities" noted [10, p. 503], and a normal EMG/nerve conduction study with "no electrical evidence of peripheral neuropathy" on April 16, 2014. [10, p. 505]

impairments is supported by substantial evidence. The ALJ's findings on residual functional capacity were properly based on the totality of the evidence, and are amply supported by the record. See *Ripley v. Chater*, 67 F.3d at 557 (5th Cir. 1995); *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). Allen's argument that there is record evidence to support a different conclusion than that reached by the ALJ is to no avail since the Court does not re-weigh the evidence. Indeed, the Court must defer to the ALJ's decision when substantial evidence supports it, even if the Court might have reached a different conclusion based on the evidence of record. *Johnson*, 864 F.2d at 343; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

In her three-paragraph argument that the ALJ did not properly credit the findings of treating physicians as to fibromyalgia, Allen relies on a July 2013 examination by Dr. Jackson which found evidence to substantiate the diagnosis. However, a diagnosis of a condition is not equivalent to a finding of disability under the Social Security Act. *Randall v. Astrue*, 570 F.3d 651, 658-59 (5th Cir. 2009) (physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms). It was Allen's burden to prove the condition causes impairment of sufficient severity to interfere with basic work activities. *Anthony*, 954 F.2d at 295; *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Furthermore, on rheumatology referral, in March 2014, Dr. Heather North found no convincing evidence of connective tissue disorders, and stated Allen "has little in the way of classic findings for fibromyalgia..." [10, p. 470] It is the province of the ALJ to resolve such conflicts in the evidence.

The Court finds no merit to Allen's argument that due to fibromyalgia in conjunction with arthritis or musculoskeletal impairments and obesity, she is unable to ambulate effectively such that she meets Listing 1.02A. This listing involves "major dysfunction of a joint(s) ...

characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)" with involvement of "one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively, as defined in 1.00B2b."[9]  Again, it was Allen's burden to prove she met listing 1.02A by proving she satisfied *all* the specified criteria of the listing.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  There is record evidence that Allen demonstrated normal gait and coordination [10, pp. 349, 353, 356, 412]; even Dr. Jackson noted no incoordination or imbalance, reported a normal motor exam with intact 5/5 strength in all muscle groups with normal tone and no tremor, and his spinal and extremity examination found normal range of motion of all major joints and no arthritic changes.  [10, p. 391]  The fact that Allen used a cane does not satisfy the listing because it fails to establish that she has "insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities," in accordance with the very definition of "inability to ambulate effectively."  Failure to meet all the criteria of a listing by even a slight margin fails to qualify as a listed impairment.  *Sullivan*, 493 U.S. at 530, n.8.

Allen contends the ALJ failed to properly consider her obesity, citing an April 2014 medical record of Dr. Babar which refers to findings of restrictive changes in a February 2014

---

[9]"Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."

pulmonary function test. In that report, Dr. Babar stated:

> decreased lung volumes are probably D2 obesity associated restriction, since no interstitial lung pathology was noted on the previously performed computed tomography scan. I have emphasized to the patient the need to quit smoking. She is agreeable to trying again using the cocaine patches. We are also going to try and arrange pulmonary rehabilitation for her. Since she has moderate obstructive changes, I am going to start her on Spiriva 1 puff a day.

[10, p. 481, 547] In this same visit, Dr. Babar found "sleep study did not show any obstructive sleep apnea,"[10] and noted that Allen stated,

> her breathing is doing okay. Getting short of breath if she walks a short distance. Has had one flare up over the past year, she thinks. Sleeping better with oxygen. Smoking less than a pack a day currently. Did quit for a month but restarted.

[10, p. 482, 543] In his findings of Allen's severe impairments, the ALJ actually cited Exhibit B17F, which is a second copy of Dr. Babar's above medical records. [10, pp. 531-556]

The ALJ stated he "specifically considered the reasonably expected concomitant effect of [Allen's] obesity" on her other disorders, and the record shows he included postural limitations in the RFC as a result. Allen has identified no record evidence indicating functional limitations due to obesity which exceed those found by the ALJ, and record evidence of her daily activities comports with a finding that she remained able to perform light work. See, *Williams v. Astrue*, 2010 WL 517590, at *4 (N.D. Tex. Feb. 11, 2010) (ALJ's decision demonstrated he considered claimant's obesity in performing his analysis and limiting claimant to light capacity work "which would likely be consistent with any obesity-related limitations").

Finally, Allen complains that the ALJ failed to properly credit treating physicians' findings of spinal disorders. Allen points out that her primary care physician diagnosed degenerative joint disease of the spine on January 9, 2012 and polyarthritis of the spine, hips,

---

[10] Plaintiff stated she had been diagnosed with sleep apnea citing a number of pages of the record, however none of those references contains such a diagnosis. [14, p. 19]

and wrists on January 19, 2012.  Again, diagnosis does not equal disability.  The record shows a whole body scan on January 24, 2012 showed only mild degenerative changes of Allen's right knee; an MRI on April 5, 2012 revealed normal alignment of the lumbar spine, mild degenerative disc disease at L4-L5, and mild central spinal canal stenosis; and March 2013 xrays of the spine showed a normal cervical spine and a lumbar spine with normal curvature and alignment with mild degenerative changes.  Furthermore, Allen underwent a course of physical therapy to reduce back pain beginning April 2, 2013, during which she reported no new complaints [10, pp. 359-386], and was consistently noted to be progressing with treatment goals. [10, pp. 364, 367, 370, 377, 380]  On May 23, 2013, Allen stated she had pain relief with treatment, and she reported a 75% improvement of upper extremity symptoms, and a 40% improvement of lumbar and lower extremity symptoms.  [10, pp. 382-83]  In August 2013, Allen denied back problems, and examination of her back found she had normal muscle strength and tone and noted no spinal abnormalities.  [10, pp. 515-16]  "If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."  *Johnson*, 864 F.2d at 348.  The Court finds substantial record evidence supports the ALJ's findings with respect to Allen's back complaints.

   Where, as here, the claimant is found unable to perform the requirements of her past relevant work, the Commission has the burden at Step Five to show significant numbers of jobs exist in the national economy which the claimant can do.  See *Perez*, 777 F.2d at 300-301.  This burden was satisfied by the VE's testimony which incorporated the limitations of the RFC, and identified available jobs within Allen's limitations.  The burden then shifted back to Allen to show she could not perform those jobs.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  Allen failed to carry her burden.

Based upon the record in its entirety, the Court finds substantial record evidence supports the decision of the Commissioner, and that the decision was reached in accord with relevant legal standards. The decision of the Commissioner will therefore be affirmed, and Allen's motion for summary judgment, denied. A separate judgment will be entered.

SO ORDERED, this the 21st day of July, 2017.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE